STEPHEN J. WINDHORST, Judge.
|2The minor in this proceeding filed a petition in this Court seeking an order authorizing an abortion without parental approval or notification, pursuant to La. R.S. 40:1299.35.5. For the reasons that follow, we deny her petition.
The minor, A.V.P., filed her application for an order authorizing an abortion without parental knowledge or consent in the Juvenile Court on January 24, 2013. Pursuant to the Children’s Code, counsel was appointed to represent her in the hearing, which was held on that same day. Following the hearing, the Juvenile Court denied her petition. Shortly thereafter, A.V.P. filed a motion for appeal, which was granted by the trial judge on January 25, 2013 at 10:00 A.M., according to the time stamp of the Juvenile Court. Trial de novo in this Court was held on January 25, 2013 at 1:30 P.M. The trial was held in chambers with A.V.P., her appointed attorney, and a court repoi'ter.
A.V.P. testified that she was 17 years old, and would be 18 in 3 months. A.Y.P. testified that she resides with her mother, in an apartment located in a | ¡/‘good neighborhood” of Metairie. A.V.P. stated that her mother provides her basic necessities, but she pays for her car and insurance (the car is in her mother’s name), clothing and toiletries, and some food.
A.V.P. stated that she is currently in the 12th grade in high school, where she is an honor student, and she also works at a pizza restaurant 35-40 hours per week. She has been accepted to college, and is eligible for a TOPS Plus scholarship.
In response to questioning by the Court, A.V.P. expressed concern that she would lose her TOPS scholarship if she were to carry her child to term. A.Y.P. also expressed concern about the stress involved in finishing high school while pregnant, but stated that she would push herself to graduate regardless. AY.P. stated that she was physically and mentally healthy, and there were no medical contraindications to her having the child, and she does not fear going through childbirth. She had not obtained much information on prenatal care, but had done some research on housing and daycare for college students with children. AY.P. has some concerns about the medical expenses of having the child, but she had not really looked into it.
A.V.P. further indicated that she and the father of her child had been a couple for eight months, but the relationship ended abruptly when she informed him she was pregnant. The Court did not elicit the name of the father, but A.V.P. indicated that he was 19 years old, and had obtained his G.E.D. He had been working, but had recently lost his job. A.V.P. stated unconvincingly that their breakup was because of his frequent use of marijuana, yet the breakup occurred only when she told him she was pregnant. She stated that he told her to do what she thought was best, but to leave him out of it. Further, he said that he did not want anything to do with the baby if she had it, and wants nothing to do with her “as of now.” Since then, A.V.P. has remained in at least periodic contact with him, | informing him, for example, of her clinic appointment(s) and of the hearing in Juvenile Court, which she told him he should attend, but “he refused to show up.”
A.V.P. stated that she did not have a good relationship with her mother, and she *1206 believed her mother would throw her out of the house if she announced she was pregnant. A.V.P. related that four years earlier her older sister became pregnant when her sister was 16 and A.V.P. was 14. At that time, they were living near Chicago. A.V.P. stated that when her sister told her mother, her mother threw her out of the house, and the sister went to live in a group home. The sister intended on keeping the child, but later miscarried. A.V.P. stated that her mother said “terrible things” about her sister at that time. Subsequently, A.V.P. moved with her mother to Louisiana. The sister remained in the Chicago area and visits once a year. A.V.P. stated that her sister and her mother do not speak when the sister visits. A.V.P. stated that she is very close to her sister, and has told her of the pregnancy. Her sister was upset, but agreed that abortion was the best option.
In describing her relationship with her mother, A.V.P. stated that her mother only provided her with the necessities of life, and that they would occasionally go for days without seeing each other because of their work schedules. A.V.P. stated that although her mother was the registered owner of her car, she pays the car note and expenses. A.V.P. was very concerned that her mother would take the car away from her if she found out that she was pregnant.
A.V.P. stated that her mother had a master’s degree and maintained full time employment. A.V.P. also stated that her mother was “emotionally inept” and that she drank too much, yet she went to work every morning, was apparently good at her job, and everyone there seemed to like her mother. Her mother had never been arrested, investigated, or undergone counseling, and is not physically abusive. A.V.P. also stated that her mother is not religious or bigoted.
| fiA.V.P. stated that she had never discussed the possibility of her having children with her mother, and therefore she did not know how her mother would feel about being a grandmother, but she thought her mother didn’t like young children much. She further opined that she thought her mother would be against abortion. A.V.P. believes her mother would also reject the option of adoption, and that her mother would feel that it is A.V.P.’s responsibility to take care of her child. A.V.P. stated that she believed her mother would be angry if she found out that she was sexually active at her age and that she was pregnant. A.V.P. also stated that she believed her mother would be angry if she learned of the pregnancy, or that A.V.P. had had an abortion, from a third party, such as one of A.V.P.’s friends. A.V.P. also stated that she intended to inform her mother that she had had an abortion in the future after she was living on her own.
A.V.P. stated that she has received counseling at the clinic that would perform the abortion. She said that the physician who would perform the procedure told her about alternatives. The clinic also instructed her of the procedures for a judicial bypass of parental permission.
A.V.P. stated that she did not seek counseling outside of what was offered at the abortion clinic. She had researched the procedure and the possible ramifications on the Internet. A.V.P. also had told some of her friends she was pregnant and what she intended to do. She said that her friends were a good support group for her.
A.V.P. stated that she did not know where her father was, and that she had not spoken to him in 3 years. She had not seen him in almost 13 years, since her fifth birthday.
A.V.P. stated that she had not had any discussions concerning the adoption pro *1207 cess, parent selection or “open adoptions.” A.V.P. indicated she is opposed to | fiadoptions, and stated that she believes that giving a child for adoption is “immoral” because she had heard stories of adopted children being abused, sexually molested or killed. A.V.P. also stated that intrafamily adoption was out of the question, because there was no family member interested, although she also stated that she had not told anyone or discussed the issue with anyone.
A.V.P. stated that abortion had been her first choice because she did not think she was emotionally or financially ready to care for a child. She also stated one reason she did not tell her mother was she believes her mother would make her have the child. However, she also stated that if this Court were to involve her mother, she believes her mother would acquiesce to the abortion, to “look like an understanding parent.” On several occasions A.V.P. was inconsistent in this regard.
La. R.S. 40:1299.35.5 requires the Court of Appeal to base its decision after trial de novo on the criteria provided in paragraphs (4), (5), and (6) of subsection (B) and issue its final judgment and order within forty-eight hours of its hearing.
According to paragraph (4), the court shall issue an order authorizing the minor to act on the matter without parental consultation or consent if it finds, by clear and convincing evidence and using “reasoned judgment and evidentiary evaluation,” that the minor is sufficiently mature and well enough informed to make the decision concerning the abortion on her own. In re L.P., 11-429, (La.App. 5 Cir. 4/28/11), 64 So.3d 850, 851. According to paragraph (5), “if the court finds that the minor is not sufficiently mature and well enough informed to make a decision intelligently among the alternatives, the court shall decide whether or not it would be in the best interest of the minor to notify her parents or guardian of the proceedings.”
l7Clear and convincing evidence, in general, means that facts must be proven to a greater degree than by a mere preponderance of the evidence, but less than beyond a reasonable doubt. Louisiana State Bar Association v. Edwins, 329 So.2d 437, 442 (La.1976); In re Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714.
In this case, the only testimony presented was that of A.V.P. herself. We have carefully considered her testimony and find that A.V.P. did not carry her burden of proof as required by the statute. A.V.P. testified that she was about to graduate from high school and had already been accepted to college. She expressed concern that she would lose her scholarship, but did not offer any proof or reasonable explanation as to why this would happen other than that she might no longer be considered an “outstanding citizen.” A.V.P. also admitted that she had investigated potential resources for attending college while pregnant or after the child is born. A.V.P. testified that she was counseled by the personnel at the abortion clinic; however she offered no testimony or other evidence as to the substance of that counseling, and no supporting evidence to show that she had been counseled on the various options open to her, or on the effects and consequences of any avenue she might choose. She did state that she had been counseled by the clinic on how to avoid parental approval through the courts. A.V.P. testified that much of her knowledge came from her own investigations and the Internet.
A.V.P. testified of a strained and distant relationship with her mother, but that her mother does care for her well-being. A.V.P. believed her mother would be un-supportive regardless of her choice with regard to the pregnancy. A.V.P. admitted that her opinion of her mother’s reaction is *1208 based primarily on her mother’s reaction four years earlier when her older sister became pregnant at the much younger age of 16 and chose to have her child.
|8A.V.P. also gave inconsistent answers about how her mother would feel and react to the prospect of her having an abortion. At various points in her testimony she indicated that her mother would probably be against it; that she may be ok with it; and that she would very probably consent to it. Her mother would probably become angry, mainly because she had been irresponsible in being sexually active and becoming pregnant. It is obvious that while the news of the pregnancy and the possibility of abortion would upset her mother, her mother would not be closed-minded about her options. Furthermore, while her mother was portrayed in less than ideal terms, it is clear that A.V.P. has grown to be a responsible and intelligent young woman while in her mother’s care.
While this Court finds that A.V.P. presented herself as a responsible and mature young lady for her age, we are not convinced that she is sufficiently mature and well-informed enough to make such a major decision on her own, or with the limited wisdom and support of her peers, no matter how well-intended they may be. A.V.P.’s beliefs that she would not be able to place the child for adoption with family, or that she would lose her scholarship to attend college were made on assumption, and without investigation. A.V.P.’s conclusions as to her mother’s reaction likewise were based on speculation, and not on any current discussions with her mother. We believe that A.V.P. would benefit from consulting with her mother, as she stated that her mother is aware of her current achievements and future plans. We believe that this decision is too important to be made without the knowledge and advice of A.V.P.’s mother primarily to avoid upsetting her or incurring her anger. Presumably, A.V.P.’s mother cares for her and wants her to do what is best for her.
Nevertheless, we find that it would not be in the best interest of A.V.P. for this Court to formally notify her mother of the proceedings, believing that A.V.P. |9should be given the opportunity to reconsider her decision concerning her mother’s involvement.
For the reasons stated above, we find that A.V.P. has not proven by clear and convincing evidence that an order of this Court authorizing an abortion without parental knowledge and advice is in her best interest. Accordingly, we deny A.V.P.’s petition for an abortion -without parental knowledge and consent pursuant to La. R.S. 40:1299.35.5.

PETITION DENIED